CURTIS v. HUMPHREY.

(Circuit Court of Appeals, Seventh Circuit.   October 6, 1908.)

No. 1,476.

PATENTS (§ 328*)—INFRINGEMENT—AUTOMATIC EGG-BOILER.

The Curtis patent No. 557,192 for a device for regulating treatment of substances chronometrically, applied principally to an automatic egg-boiler, while not a pioneer patent, discloses a patentable advance on the prior art and is valid.   Claims 1 and 4 also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.
For opinion below, see 159 Fed. 169.

Paul Synnesvedt and James C. Bradley, for appellant.
Edward E. Longan, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge.   Appellant's bill was dismissed for want of equity on the ground that his patent was not infringed by appellee's device.   The suit was based on claims 1 and 4 of patent No. 557,192, issued to appellant on March 31, 1896, for a "device for regulating treatment of substances chronometrically."   These claims are as follows:

"(1) In an apparatus for regulating chronometrically the treatment of substances, the combination of an attachment or holder for an object to be moved or withdrawn; a moving or withdrawing device; a chronometrically-operated detent; and means for engaging the detent with the withdrawing de-

vice during a given period of its movement and releasing the same at the termination of such period; substantially as set forth."

"(4) The combination of a cord or chain suspending at one end a substance to be treated, and at the other connected to a normally active retracting device, with a shaft in chronometric rotation, and means for engaging the cord or chain with the shaft during any desired number of increments of the shaft rotation and releasing it when said increments are completed, substantially as set forth."

So far as these claims are concerned, the machine that is set forth in the specification consists of a basket (in which eggs, for example, may be submerged in a vessel containing boiling water), a chain that extends from the basket up over a pulley and down to a weighted ratchet bar, a ratchet disk in engagement with the ratchet bar, and a shaft which through intermediate gearing connects the ratchet disk to the escapement of a clock. The operation is this: The ratchet bar is set so that a greater or less proportion of its length (depending on the number of minutes the eggs are to be boiled) will have to pass the ratchet disk; the weighted bar causes the shaft to rotate; but the speed of rotation that would be due to the gravity-pull of the weighted bar is restrained and regulated by the escapement of the clock, so that the shaft is "in chronometric rotation" and the ratchet disk becomes "a chronometrically-operated detent"; and finally, when the disk releases the bar, the weight of the latter exerts a sudden pull on the chain and lifts the egg-container out of the boiling water.

Nothing in the prior art throws any doubt upon the patentable novelty of the above-described combination. The elements were old, and some of them had been combined for the same or analogous purposes. For example, in O'Brien's automatic egg-boiler (patent No. 284,051, August 28, 1883), a clock or timing mechanism pulls a trigger and releases a spring which pushes the egg-container up out of the water like a jack-in-the-box. Here is a combination of a "holder for an object to be moved or withdrawn, a moving or withdrawing device, and a chronometrically-operated detent." But no means is used or suggested "for engaging the detent with the withdrawing device during a given period of its (the latter's) movement and releasing the same at the termination of such period." And so with the Weissenborn patent No. 125,362, April 2, 1872, for raising lead pencils "from the bath of varnishing or coloring material, after having been dipped therein, at degrees of velocity corresponding with the nature and consistency of the said varnishing or coloring material and the thickness of the coat that is desired to be left thereon." Though the pencils are raised by a weight whose velocity of descent is regulated by an adjustable escapement, there is no way shown or hinted at for a time-measuring engagement and then a disengagement between the weight and the escapement, because the connection between the Weissenborn weight and escapement is continuous and permanent. The other references discussed by experts and by counsel (Gribben, No. 160,092, February 23, 1875; McGlynn, No. 375,497, December 27, 1887; Reithoffer, No. 403,446, May 14, 1889; Carbonnier, French patent, No. 8,692, February 8, 1837) also fail, in our judgment, to anticipate either in structure or creative thought the distinguishing feature of appellant's device as above described, namely, the twofold use of the weighted

ratchet bar, first, to act with the ratchet disk and the escapement as a measurer of the time during which the receptacle at the other end of the chain is to be allowed at rest, and, second, on being released from the ratchet disk, to act as the motor for the instant raising of the receptacle.

Now while appellant was not a pioneer in devising apparatus of this class, he is nevertheless entitled to a protection as wide as his invention. Appellee's device produces the same result by the same method of operation; and indeed no distinguishment is attempted except in two particulars. Appellant's patent covers more than the device as hereinabove described. The apparatus of claims 1 and 4 includes but one receptacle. Other claims provide means for operating a plurality of receptacles in connection with a single shaft and a single escapement. For this purpose appellant uses a certain braking mechanism to offset the action of the additional weighted ratchet bars as they come into play against the single escapement. When appellee desires to use a plurality of receptacles, he employs a like number of independent escapements. So he avoids the use of the braking mechanism. But this is wholly immaterial, because claims 1 and 4 do not embrace that feature of the patent. The other ground of distinction is that appellee does not have an independent clock. But, as hereinbefore stated, the "chronometric rotation" of appellant's shaft, so far as claims 1 and 4 are concerned, is obtained by restraining the gravity-pull of the ratchet bar by means of the shaft's geared connection with the escapement of the clock. For egg-boiling purposes time is measured by the operative length of the ratchet bar; and the hands and face and all the parts that would not affect the working of the escapement could be dispensed with. And that is just what appellee has done. But the substitution of a simple escapement for an entire clock not only fails to avoid the terms of claims 1 and 4, but clearly conforms to the express teaching of the patent. "It will readily be perceived that the overweight W, when engaged with the shaft B by means of its rack-bar h, becomes a motor for causing its rotation." "A clock C of ordinary construction is utilized as a regulating device for permitting a constant and chronometric rotation of the shaft B; but any form of motor capable of chronometric regulation or a simple escapement or other device permitting a time-regulated rotation of the shaft B may be employed in lieu of the clock C."

The decree is reversed, with the direction to enter a decree in appellant's favor for an injunction and an accounting.